**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OMNI ENERGY GRP. LLC,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-15** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **OHIO DEP'T OF NAT. RES.,** *et al.*, | : | **Magistrate Judge Chelsey M. Vascura** |
| | : | |
| **Defendants.** | : | |

**OPINION AND ORDER**

This matter comes before this Court on two Motions to Dismiss Plaintiff Omni Energy Group, LLC's Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim. (ECF Nos. 41, 45). For the following reasons, Omni's Amended Complaint is **DISMISSED**.

## I.    INTRODUCTION

In order to help protect the public health, the United States regulates public water systems. Part of this effort includes regulating Class II injection wells. These wells are used to "inject" fluids underground that were "brought to the surface in connection with natural gas storage operations, or conventional oil or natural gas production," used for "enhanced recovery of oil or natural gas," or used for "storage of hydrocarbons." 40 C.F.R. § 144.6(b). The regulation of these wells falls under the ambit of the Safe Drinking Water Act.

The Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.*, was enacted in 1974. Although it tasked the United States Environmental Protection Agency and its Administrator with enforcing the Act, the Act also provided for a system of "cooperative federalism," whereby states could obtain "primary enforcement responsibility" under certain conditions. *Mich. Dep't of Env't*

*Quality v. City of Flint*, 282 F. Supp. 3d 1002, 1012 (E.D. Mich. 2017); *see* 42 U.S.C. §§ 300h-1(b)(3); 300h(b)(1). There are two ways for states to achieve enforcement "primacy" under the Act to regulate Class II injection wells.

*First*, states can apply for primary enforcement responsibility from the Environmental Protection Agency, showing that they have adopted and will implement "an underground injection control program which meets the requirements of regulations in effect under section 300h." 42 U.S.C. § 300h-1(b)(1)(A)(i).

*Alternatively*, as relevant in this case and "in lieu of" the requirements under the first method, states may show that their underground injection control program meets certain minimum requirements[1] "and represents an effective program [] to prevent underground injection which endangers drinking water sources" from Class II injection wells. 42 U.S.C. § 300h-4(a); *see generally* 40 C.F.R. § 144.6. Upon such a showing, the state gains primacy until and unless the Environmental Protection Agency determines that state primacy is no longer valid. 42 U.S.C. § 300h-4(c)(2). Primacy states may place further limitations on underground injection wells. 42 U.S.C. § 300h-2(d). Federal regulations specify that "[n]othing . . . precludes a State from[] [a]dopting or enforcing requirements which are more stringent or more extensive than those required," or "[o]perating a program with a greater scope of coverage than that required." 40

---

[1] These minimum requirements mandate that state underground injection control programs: (A) prohibit unpermitted injections not otherwise permitted by rule; (B) require that permit applicants "satisfy the State that the underground injection will not endanger drinking water sources" and that state promulgated rules not authorize underground injections endangering drinking water sources; (C) provide inspection, monitoring, recordkeeping, and reporting requirements; and (D) apply to underground injections by Federal agencies pursuant to 42 U.S.C. § 300j-6(b), as well as to other persons, whether or not occurring on Federal property. 42 U.S.C. § 300h(b)(1)(A)–(D).

C.F.R. § 145.1(g).  Additional coverage in state programs with a broader scope "is not part of the federally approved program."  40 C.F.R. § 145.1(g)(2).

The State of Ohio obtained primacy for the regulation of an underground injection control program in 1983.  40 C.F.R. § 147.1800.  It did so through the alternative method by demonstrating that its program met the minimum statutory requirements and "represent[ed] an effective program to prevent endangerment of underground sources of drinking water."  *Ohio Dep't of Nat. Res. Underground Injection Control Program Approval*, 48 Fed. Reg. 38238, 38238–29 (Aug. 23, 1983).  Ohio's primacy regime is set forth under Ohio law and regulations.  40 C.F.R. § 147.1800; *see* Ohio Rev. Code § 1509.22(D); Ohio Admin. Code § 1501:9-3-05.  It is also governed by a 1993 amendment to a Memorandum of Agreement between the Environmental Protection Agency and the Ohio Department of Natural Resources, which provided that the Ohio Department of Natural Resources would be "responsible for and has authority over all Class II [injection wells]" in the state of Ohio, with the obligation to take the lead on enforcing state underground injection program requirements and sole responsibility over the permitting process.  (ECF No. 22-3 at 1, 3–4).  The Environmental Protection Agency retained oversight responsibilities of the Ohio Department of Natural Resources' administration of the program, and reserved the right to withdraw primacy.  (*Id.* at 5).

## II.    BACKGROUND

Plaintiff Omni Energy Group, LLC is a New Jersey limited liability company with its principal place of business in St. Clairsville, Ohio.  Omni is in the business of constructing and operating Class II injection wells.  Omni sues both state and federal defendants for alleged violations in permitting two Class II injection wells under the Safe Drinking Water Act, related Ohio laws, and both the Ohio and U.S. Constitutions.  Specifically, Omni alleges that Defendant

3

Ohio Department of Natural Resources (the "Department"), as well as Defendants Chief Eric Vendel, Director Andrew Adgate, Manager Michael Brown, and Attorney Halli Watson[2] (collectively, the "State Defendants")—all employees within the Division of Oil and Gas Resources Management (the "Division")—and Defendant Sean Murphy—a petroleum engineer and contractor working on behalf of the State of Ohio—failed to grant Omni appropriate permits for its two Class II injection wells after Omni expended considerable resources to construct them, effectively rendering the wells inoperable. Omni also alleges that two federal Defendants, the United States Environmental Protection Agency and EPA Regional Office 5 (together, the "EPA"), failed to ensure that the State of Ohio's regulatory regime adhered to the requirements of the Safe Drinking Water Act. Last, Omni raises its belief that two unidentified individuals, Defendants John Doe and Jane Doe, were involved, though their involvement is never specified. Omni seeks declaratory relief specifying the limits of the Safe Drinking Water Act, an order of mandamus against the EPA Defendants to ensure that the State Defendants do not violate the Act, and monetary damages pursuant to 42 U.S.C. § 1983 against the State Defendants for violations of Omni's rights. All of the identified individual Defendants are sued in both their individual and official capacities.

### A. Factual Background

Ohio has seen an oil and gas production boom since 2010, which has included the exploration, development and production of oil and gas hydrocarbons from the Utica Shale

---

[2] Omni originally named the Ohio Department of Natural Resources' Staff Attorney Holly Lovey as a Defendant. (ECF No. 1 ¶ 6). Then, it substituted Defendant Watson as a Defendant in Lovey's place in the Amended Complaint. (ECF No. 22 ¶ 6).

formation.[3]  (Am. Compl. ¶ 130).[4]   This boom corresponded with increased fracking activity in the state.  Fracking produces millions of barrels of a brine saltwater fluid as a byproduct.  (¶ 131).  Ohio "encourages the construction and operation of Class II wells to support the development of the oil and gas industry within the state, as well as to ensure the proper disposal of residual brine water, such that it does not threaten [underground sources of drinking water]."  (¶ 132).

      1.   *Omni seeks to construct two new Class II injection wells in Belmont County.*

In 2019, Omni spent more than $1 million acquiring land in Belmont County, Ohio so that it could construct two new Class II injection wells.  (¶ 133).  Omni submitted two applications to the Ohio Department of Natural Resources' Division of Oil and Gas Resources Management for this project—one for each well.  (¶ 47).  Each proposed injection well would inject a "primarily" brine (saltwater) fluid underground.  (¶¶ 1, 21).

By the end of January 2020, Omni had provided the Division with additional information the Division had requested, and the Division decided it would hold a public meeting regarding Omni's applications.  *State ex rel. Omni Energy Grp., LLC v. Ohio Dep't of Nat. Res.*, 2020-Ohio-5581, ¶¶ 5–6 (Ohio 2020).[5]   The COVID-19 pandemic intervened, making in-person public

---

[3] *See generally Honey Crest Acres, LLC v. Rice Drilling D, LLC*, 723 F. Supp. 3d 617, 621 n.1 (S.D. Ohio 2024) (Marbley, J.) (noting that the Utica Shale is an "old[], large[], and deep[] formation of shale rock," which "contains an abundance of recoverable gas and oil"); Ohio Dep't of Nat. Res., *Unconventional Shale Resources*, available at https://ohiodnr.gov/discover-and-learn/safety-conservation/about-ODNR/geologic-survey/energy-resources/unconventional-shale-resources (last visited Mar. 5, 2026) (discussing the production of oil and natural gas generally, as well as the use of new drilling technology to recover hydrocarbons from the Utica Shale formation).

[4] All references to "Am. Compl." or parenthetical citations to paragraphs "(¶¶ _)" cite to Omni's operative Amended Complaint (ECF No. 22), unless otherwise stated.  The Court takes all well-pleaded allegations in the Amended Complaint as true for the purposes of the Motions to Dismiss.

[5] Omni references this decision by the Supreme Court of Ohio, (*see* Am. Compl. ¶ 55), and this Court takes judicial notice of it.  *See Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020) (taking judicial notice of Michigan Court of Appeals case dockets).

meetings ill-advised.  The Division decided it would hold a virtual public meeting in April 2020, but another energy company objected to Omni's applications and obtained an injunction blocking that virtual meeting.  *Id.* ¶ 6.

Despite these setbacks, Omni ultimately obtained permits to drill both of its proposed injection wells in December 2020 and duly commenced drilling.  (Am. Compl. ¶ 57).  The drilling permits required Omni to submit a "step-rate pressure test" for each injection well to the Division before Omni would receive a permit to inject.  (¶¶ 59–61; *see* ECF Nos. 22-5; 22-6).  As Omni explains it, these tests would find the fracture pressures of the given underground rock formations for each injection well, and once those fracture pressures were known, the maximum allowable injection pressures for each injection well could be set.  Those maximum allowable injection pressures would implement a safety factor to ensure the injection pressure at either injection well would not reach a pressure that would fracture the formation, because a formation fraction could lead to injection fluid migrating and penetrating a source of drinking water.  (¶ 62).  Omni submitted its proposed step-rate testing procedures on April 5, 2021, and the Division adopted them without amendment on June 1, 2021.  (¶ 68; *see* ECF Nos. 22-9; 22-10).

Omni step-rate tested its wells in June 2021 with the Division's on-site inspector present. (¶ 71).  Omni's consulting petroleum engineer found that the first and shallower injection well had a maximum pressure of 1,784 psi, while the step-rate testing of the second injection well reached a maximum pressure of 3,562 psi and resulted in a "fractured . . . injection zone."  (¶¶ 73–74). Omni requested a maximum allowable injection pressure of 1,605 psi (90% of the maximum pressure) for the first injection well, and 3,205 psi (again, 90% of the maximum pressure) for the second injection well.  (¶ 73).

Months passed without Chief Vendel rendering a decision on the permit requests—a delay that Omni characterizes as "completely unwarranted," because Omni had completed construction of the injection wells and had fulfilled the testing and technical requirements under its drilling permits. (¶ 75). Omni sought mandamus relief from the Supreme Court of Ohio in October 2021, but that relief became unnecessary when Chief Vendel issued permits to inject in November 2021. (¶ 77; *see* ECF Nos. 22-12; 22-13).

2. *Omni receives permission to inject, but with only a fraction of its expected maximum allowable injection pressures.*

The two original permits granted Omni only a fraction of the injection pressures that Omni expected for each well. Omni received permission to use a maximum allowable injection pressure of 1,120 psi for the first, shallower injection well and 1,315 psi for the second injection well. (¶ 80). The first injection well began operating on December 1, 2021, and Omni claims it was "just viable commercially" based on the 1,120 psi limit. (¶¶ 87–89). But the second injection well's maximum allowable injection pressure of 1,315 was "woefully insufficient to overcome the resting pressure of its 'injection zone,'" and thus that well "sat idle ever since its completion" in 2021. (¶ 90). Omni alleges that Chief Vendel "intentionally and unlawfully" set the second injection well's maximum allowable injection pressure below the injection zone's resting pressure "such that Omni would never be able to operate" that injection well. (¶ 91).

According to Omni, the permits' maximum allowable injection pressure numbers originated from a "very conservative formula" that need not have applied, because there was no nearby underground source of drinking water threatened by the injection wells, nor was there any public safety or health concern. (¶¶ 80, 84, 50–51). In fact, Omni posits that Chief Vendel failed to "consider the absence of any [underground source of drinking water] prior to issuing his [orders

7

granting the permits]," Division personnel "never considered Omni's step-rate test analysis," and the EPA failed to ensure that the Division use site-specific step-rate testing, and failed to require that the Division or Chief Vendel consider the results of a step-rate test procedure after they order one done.  (¶¶ 84–86).

On November 17, 2021, Omni appealed Chief Vendel's orders granting the original permits with the Oil and Gas Commission of Ohio.  (¶ 94).  Despite the disagreement regarding the maximum allowable injection pressure numbers set for each well, Omni was able to operate the first injection well starting in December 2021 without accident or issue, and at growing profitability.  (¶ 93).

### 3.  Omni's injection-pressure expectations are lowered again.

While Omni's appeal of the orders granting the original permits was pending, the Ohio Department of Natural Resources, Chief Vendel, Natural Resources Director Andrew Adgate, Underground Injection Control Manager Brown, and Staff Attorney Watson issued two new orders in May 2022.  (¶ 95; *see* ECF Nos. 22-14; 22-15).  The first order revoked the first injection well's permit to inject, while the second order reissued the first injection well's permit to inject but at a lower maximum allowable injection pressure of 960 psi.  (¶¶ 96–97).  This brought the first injection well's maximum allowable injection pressure below the resting pressure of the injection zone, and Omni had no choice but to cease operating the first injection well.  (¶ 100).

These new orders were based on a memorandum issued by Defendant Murphy, a petroleum engineer retained for purposes of litigation.  (*See* ECF No. 22-16).  Defendant Murphy disagreed with the analysis of Omni's consulting engineer and the step-rate testing Omni had conducted in 2021.  (¶¶ 101–02).  According to Omni, Murphy applied the wrong standard and failed to consider the absence of underground sources of drinking water.  (¶¶ 103–06).  In addition, Omni alleges

that Chief Vendel applied Murphy's report inconsistently. Although Chief Vendel issued these new orders reducing the injection pressure of the first injection well, he did not rely on Murphy's analysis regarding the second injection well. Murphy's report suggested that the maximum allowable injection pressure for the second injection well could "nearly double" from 1,315 psi to 2,558 psi without danger of fracturing the injection zone. (¶¶ 107–09). This would have overcome the resting pressure of the second injection well, (¶ 110), allowing Omni to operate it.

### B. Procedural Background

Omni initiated this lawsuit against the Defendants in January 2025, and filed its Amended Complaint a month later. In that Amended Complaint, Omni claims to have expended over $8 million in constructing and operating its two new Class II injection wells in Belmont County. Despite this significant investment, it claims it cannot profitably use these wells due to unlawfully low maximum allowable injection pressures set by the State Defendants for each well. (¶¶ 80, 84, 87–91, 95–98, 100, 107–10). Relatedly, Omni asserts that the EPA has failed to ensure that the Safe Drinking Water Act has been properly enforced by the State Defendants. (¶¶ 8–9, 29, 118, 127–28). Omni also asserts that two unknown Doe Defendants were involved in the actions giving rise to the lawsuit, though it does not specify their role. (¶ 10).

Omni's Amended Complaint seeks relief on three counts. *First*, Count I seeks, under 28 U.S.C. § 2201(a), a declaratory judgment regarding Omni's rights under the Safe Drinking Water Act and its corresponding regulations, as expressed against the State Defendants and the EPA Defendants. (¶¶ 14, 113, 118; *id.* at 36). *Second*, Count II seeks mandamus relief against the EPA Defendants, pursuant to 28 U.S.C. § 1361. Omni asks this Court to order the EPA to fulfill its oversight obligations by ensuring that the State Defendants are enforcing the Safe Drinking Water Act lawfully and reviewing Chief Vendel's orders regarding the two injection well permits. (¶¶

9

14, 120–22 , 126–28; *id.* at 36). *Third*, Count III seeks compensatory relief pursuant to 42 U.S.C. § 1983 against the State Defendants and Defendant Murphy. (¶¶ 14, 141–47; *id.* at 36–37). Omni also seeks to recover costs, attorney's fees, and pre- and post-judgment interest, and asks for injunctive relief. (*Id.* at 37).

The Magistrate Judge ordered Omni to show cause why the unidentified Doe Defendants should not be dismissed for failure to effect service. (ECF No. 43 at 2). Omni never responded to that Order, and the Magistrate Judge recommended dismissal of the Doe Defendants and advised Omni that it had 14 days to object to that recommendation. (ECF No. 50 at 1–2). Omni never objected to that recommendation.

The State Defendants (and Defendant Murphy) and the EPA filed two separate Motions to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 41; 45). The parties timely responded and replied, and this matter is ripe for review.

### III.    STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss challenges a court's subject matter jurisdiction to hear a case, whereas a Rule 12(b)(6) motion to dismiss challenges the sufficiency of the pleading. When both Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss are made, federal courts must first address the Rule 12(b)(1) motion, because they must first decide whether they possess subject matter jurisdiction before determining whether a plaintiff has failed to state a claim upon which relief may be granted. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666–67 (S.D. Ohio 2019) (Marbley, J.); *see Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The legal standard for each type of motion is set forth below.

10

### A. Subject Matter Jurisdiction

Rule 12(b)(1) challenges the court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The standard of review for such a challenge depends on whether it is "a facial attack or a factual attack."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack on complaint's alleged subject matter jurisdiction "questions merely the sufficiency of the pleading."  *Id.*  As with a Rule 12(b)(6) motion to dismiss, courts assume the complaint's allegations are true for the purposes of the motion.  *Id.*; *Mitchell*, 374 F. Supp. 3d at 667.

By contrast, when a factual attack is levied against a complaint's alleged subject matter jurisdiction, courts have "broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists," *Adkisson v. Jacobs Engineering Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015), and ultimately "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist."  *Gentek*, 491 F.3d at 330.  The plaintiff bears the burden of proving jurisdiction to survive a Rule 12(b)(1) motion.

### B. Failure to State a Claim

The complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint, and permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Such a motion tests the complaint's cause of action, and is "not a challenge to [its] factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528

11

F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted).  This favorable treatment of the complaint applies to well-pleaded factual allegations.  Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

### IV.    LAW AND ANALYSIS

Omni alleges that the Defendants have misapplied the Safe Drinking Water Act in violation of Omni's rights, and seeks declaratory, mandamus, compensatory, and injunctive relief.  (Am. Compl. ¶¶ 13–14; *id.* at 36–37).  Defendants seek to dismiss the entirety of Omni's claims.  (*See* ECF Nos. 41; 45).  This Court examines each count in turn, noting that the Defendants have levied

12

facial challenges[6] to subject matter jurisdiction under Rule 12(b)(1) that must be adjudicated first, before the sufficiency of the pleading's claim for relief is evaluated under Rule 12(b)(6).[7]

## A. EPA Defendants

As a general matter, the United States and its agencies have sovereign immunity from suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). This immunity is waived—and the federal government can be sued under the Safe Drinking Water Act—under certain limited circumstances where it is alleged that: (1) the United States violated a requirement under the Act; (2) the EPA failed to perform a non-discretionary duty; or (3) the EPA failed to collect an unpaid but assessed penalty. 42 U.S.C. § 300j-8(a)(1)–(3)). As a prerequisite for bringing such an action under this limited waiver of sovereign immunity, a private citizen must first provide notice sixty days prior to initiating suit. Who receives notice depends on the nature of the civil action the private citizen intends to bring. 42 U.S.C. § 300j-8(b)(1)–(3).

The EPA raises two principle arguments in its Motion to Dismiss. First, it argues that this Court lacks subject matter jurisdiction over Omni's claims against it because there is no applicable waiver of the United States' sovereign immunity, and Omni's Amended Complaint fails to identify where it purports to rest jurisdiction in 42 U.S.C. § 300j-8. (ECF No. 45 at 8–9). Although the Amended Complaint recognized that subject matter jurisdiction could be conferred under § 300j-8(a), and that the notice prerequisite of § 300j-8(b) must be satisfied, (¶¶ 11–12), Omni did not address under which particular subsection of § 300j-8(a) it sought to sue, nor through which

---

[6] The EPA explicitly states that it raises a facial challenge to the sufficiency of the pleadings under Fed. R. Civ. P. 12(b)(1). (ECF No. 45 at 7). Although the State Defendants and Defendant Murphy are not quite so explicit, they also raise a facial, not factual, challenge to subject matter jurisdiction. (ECF No. 41 at 2) ("For purposes of this motion to dismiss, . . . the Court must construe the factual allegations in the light most favorable to Omni.").

[7] To some extent, the inquiry under Rule 12(b)(1) necessarily "collapse[s]" into a discussion of the merits of Omni's case. *Grinnell v. EPA*, 736 F. Supp. 3d 114, 128 (N.D.N.Y. 2024).

13

particular subsection of § 300j-8(b) it provided notice. (¶¶ 11–12, 112–28). Thus, the EPA says that Omni has failed to show that its suit falls within one of the three applicable statutory exceptions to the United States' sovereign immunity that permit private citizen suits against the EPA. Second, it argues that Omni has failed to state a claim because its notice of suit was deficient. (ECF No. 45 at 1, 8–17).

For its part, Omni asserts that Count I proceeds under the waiver of sovereign immunity found in subsection (a)(1), and Count II proceeds under the waiver found in subsection (a)(2). It clarifies that it "is not seeking monetary damages from [the] EPA," and therefore subsection (a)(3) is inapplicable. (ECF No. 48 at 2–3). Omni also argues that its notice was proper, and that at any rate, lack of proper notice is a procedural, not jurisdictional, issue. (*Id.* at 9–10).

The issues of a sovereign immunity waiver for subject matter jurisdiction and the requisite notice to state a claim are considered in turn. This Court lacks subject matter jurisdiction to hear Omni's claims against the EPA because Counts I and II fail to fall within either statutory waiver of sovereign immunity. But even if this Court had subject matter jurisdiction, Omni's claims against the EPA would still have to be dismissed for failure to state a claim for lack of the statutorily-required notice.

### 1. Limited Sovereign Immunity Waiver – 42 U.S.C. § 300j-8

Begin with the statutory text. Subsections (a)(1) and (a)(2) of 42 U.S.C. § 300j-8—the only subsections that Omni asserts as conferring jurisdiction—provide for private citizen suits in certain circumstances. Under subsection (a)(1), a private citizen may sue "any person," which is expressly defined to "includ[e] (A) the United States, and (B) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution," who that private citizen "allege[s] to be in violation of any requirement prescribed by or under this

14

subchapter." 42 U.S.C. § 300j-8(a)(1). To bring such a claim, the private citizen must first give notice "of such violation" to the Administrator of the Environmental Protection Agency (the "EPA Administrator"), the alleged violator, and to the State in which the violation occurred. 42 U.S.C. § 300j-8(b)(1). Under subsection (a)(2), a private citizen may sue the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this subchapter which is not discretionary." 42 U.S.C. § 300j-8(a)(2).

### 2.  Count I:  Declaratory Judgment

Omni asserts that Count I proceeds under 42 U.S.C. § 300j-8(a)(1), which permits private citizen actions against "any person [] who is alleged to be in violation of any requirement" prescribed under Subchapter XII of the Safe Drinking Water Act. Here, Omni argues that the "entirety" of its requested declaratory relief pursuant to 28 U.S.C. § 2201 "is based on" the Safe Drinking Water Act's requirements for Class II wells, that it has alleged "regulatory violations regarding the construction and enforcement" of its Class II wells, and that the primary point of its lawsuit "is to determine 'what the law is'" for the alleged regulatory violations. (*Id.* at 4–5). The EPA counters that the Amended Complaint does not establish how the EPA could be in violation of a substantive or procedural requirement of the Safe Drinking Water Act, since nowhere does Omni allege that the EPA is a regulated entity owning or operating a Class II injection well. (ECF Nos. 52 at 2; 45 at 9–10).

The EPA is correct. Count I cannot sustain a private action under subsection 300j-8(a)(1) because Omni has not sufficiently alleged any EPA violation of Subchapter XII. *See Grinnell v. EPA*, 736 F. Supp. 3d 114, 126–27 (N.D.N.Y. 2024) (a violation must be plausibly alleged). In fact, Omni does not allege that the EPA has violated *any* provision of the Safe Drinking Water Act. Rather, in the Amended Complaint, Omni expressly and repeatedly couches this Count as a

15

matter of the EPA's "duty," whether it is a duty to review Ohio's Class II well standards or Underground Injection Control programs—Ohio's enforcement primacy notwithstanding. (¶ 118(c)). But subsection 300j-8(a)(2) provides a distinct avenue for private citizens to seek civil relief for a failure of the EPA to perform any "act or duty" required by the statute. 42 U.S.C. § 300j-8(a)(2).

Omni's position—that the EPA's failure to perform its duties as a regulator under the Safe Drinking Water Act is itself an independent violation of the Act—would elide any distinction between subsections (a)(1) and (a)(2), and render subsection (a)(2) "superfluous." *Bennett v. Spear*, 520 U.S. 154, 173 (1997). If the meaning of the term "violation" under section (a)(1) was understood to encompass the failure of the EPA Administrator to adhere to his nondiscretionary duties under section (a)(2) and "allow suits against regulators *qua* regulators," then the separate subsection (a)(2) provisions allowing for suit against the EPA Administrator for failure to perform a non-discretionary act or duty "would be meaningless." *Sierra Club v. Korleski*, 681 F.3d 342, 348 (6th Cir. 2012); *see Concerned Pastors for Soc. Action v. Khouri*, 194 F. Supp. 3d 589, 603 (E.D. Mich. 2016) (suggesting that a violator under subsection (a)(1) would need to be a "polluter"); *see also Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 876–77 (6th Cir. 2016) (distinguishing Clean Water Act violator-polluters from the EPA as a regulator and noting that private citizens may sue the "EPA as a regulator only if it fails to perform a non-discretionary duty"). Along a similar vein, the separate requirements found within subsection (b)(1) mandating notice to the EPA Administrator *and* the alleged violator prior to the commencement of a civil action under subsection (a)(1) would be meaningless if the EPA *was* the alleged violator. *See* 42 U.S.C. § 300j-8(b)(1)(A)(i)–(ii). Given that Subchapter XII explicitly contemplates that the United States may own and operate its own Class II injection wells, which would also be subject

16

to the requirements of the Safe Drinking Water Act, subsection (a)(1) is better understood to apply to Safe Drinking Water Act violations by the United States under those circumstances, rather than an alleged failure of the EPA to *administer* the Act.  42 U.S.C. §§ 300j-6(a)(2), (a)(4), (b), 300h(b)(1)(D).

Although Omni's language elsewhere suggests that its construction, permitting, and operation of the two Class II injection wells were hampered by an improper application or interpretation of the Safe Drinking Water Act, it alleges that the regulation of Class II injection wells in Ohio is *conducted by the State of Ohio*, under a primacy agreement with the EPA.  (*E.g.*, ¶¶ 22–27, 118, 121–22).  Omni's requested declaratory relief cannot proceed against the EPA under § 300j-8(a)(1) because Omni has not sufficiently alleged that the EPA has violated any provision of the Safe Drinking Water Act.

To the extent that Omni alleges that the EPA had a duty to monitor Ohio's primacy regime, such allegations would be appropriately raised under § 300j-8(a)(2), which Omni seeks to do in requesting mandamus relief.

### 3.  Count II:  Mandamus Relief

Omni asserts that Count II may proceed by sovereign immunity waiver under 42 U.S.C. § 300j-8(a)(2), which permits private citizen actions against the EPA Administrator for alleged failure to perform a non-discretionary duty.  Here, Omni frames the issue as "whether there exists a nondiscretionary duty for the EPA Administrator within the [Safe Drinking Water Act] 'to provide sufficient oversight of [the Department] and [Chief Vendel's Underground Injection Control] program to ensure [Safe Drinking Water Act] compliance."  (ECF No. 48 at 5 (quoting Am. Compl. ¶ 110)).  Omni answers that question by arguing that Ohio "has unlawfully modified its primacy program relative to the regulation of Class II wells," given that the EPA must, as a

nondiscretionary duty, "oversee that process and ensure continuing compliance through an annual review" pursuant to 40 C.F.R. §§ 142.12, 142.17  (*Id.* at 5–6).

The EPA counters by pointing out that Omni simply failed to raise this issue prior to its response opposing the EPA's Motion to Dismiss.  But even if it had, the EPA notes that § 142.17 "relates to a State's primary enforcement authority for *public water systems* where the State adopts *drinking water regulations* that are at least as stringent as [the] EPA's national primary drinking water regulations," has nothing to do with Underground Injection Control programs, and cannot create a non-discretionary duty for the EPA with regard to such programs.  (ECF No. 52 at 3–4).

The EPA is correct in its arguments, and both provide independent grounds for dismissal on Count II.  As a threshold matter, Omni never notified the EPA of its theory under this regulation in its pre-suit letter, nor did make any allegation in its Amended Complaint that the EPA had failed to conduct a required *annual* compliance review of Ohio's underground injection control program—whether under the Safe Drinking Water Act, 40 C.F.R. § 142.17, or any other applicable regulation or statute.  *See* Section IV(A)(4), *infra*.  But even setting aside pre-suit notice, Omni was still required to point to a non-discretionary duty that the EPA failed to perform "under Subchapter XII" to plead a cause of action sufficiently under subsection (a)(2).  *Grinnell*, 736 F. Supp. 3d 127–28; *see City of Fairborn v. EPA*, 2023 WL 2478572, at *4, *9 (S.D. Ohio Mar. 13, 2023) (discussing analogous private citizen suit provision of the Clean Air Act and noting the obligation of the plaintiff to "point to a non-discretionary duty").  It is not enough for Omni to suggest that it was "clear that [the] EPA understood the nature of both Omni's Notice . . . and the allegation in Count II."  (ECF No. 48 at 8).  Omni failed to allege a non-discretionary duty under

18

the Safe Drinking Water Act in its Amended Complaint, and the Amended Complaint is insufficient[8] for that reason.

Second and separately, even if Omni could save its pleading in its opposition briefing to a motion to dismiss, 40 C.F.R. § 142.17 cannot save its theory of EPA liability because that regulation has nothing to do with regulatory schemes governing underground injection control programs. Rather, it governs primacy regimes for "public water systems" as they relate to "drinking water regulations." *Nat'l Wildlife Fed'n v. EPA*, 980 F.2d 765, 768 (D.C. Cir. 1992); *Mays v. City of Flint*, 871 F.3d 437, 451–52 (6th Cir. 2017) (McKeague, J., dissenting); *accord id.* at 441, 447 (Gilman, J.) (majority discussing compliance with drinking water regulation requiring quarterly and annual lead and cooper reports); *compare* 40 C.F.R. § 142.10; *see id.* § 142.1 *with* 40 C.F.R. §§ 144.1, 145.33–34 (regulatory scheme that governs Underground Injection Control programs). Thus, Omni is simply incorrect that the EPA "can be compelled to conduct the inquiry 40 C.F.R. [§] 142.17(a)(1) requires" and evaluate Ohio's Class II injection well regulatory regime (insofar as the EPA could be compelled to conduct inquiries set forth in regulations as part of their non-discretionary duties), because that regulation does not establish annual reviews for underground injection control programs within the States.

Omni's request for mandamus relief cannot proceed against the EPA under § 300j-8(a)(2) because Omni has not sufficiently alleged that the EPA failed to perform any non-discretionary duty under the Safe Drinking Water Act.

In conclusion, the EPA's Motion to Dismiss (ECF No. 45) must be granted for lack of subject matter jurisdiction under Rule 12(b)(1) because Omni has not shown any applicable waiver

---

[8] Omni cannot augment its pleadings in a response to a motion to dismiss, because the motion to dismiss tests the sufficiency of Omni's Amended Complaint itself. *See Waskul v. Washtenaw Cnty. Comm. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

of sovereign immunity applies, as required under § 300j-8(a)(1)–(2). *Rauseo v. Army Corps of Engineers*, 368 F. Supp. 3d 202, 207 (D. Mass. 2019); *see generally Gaetano v. United States*, 994 F.3d 501, 507–09 (6th Cir. 2021).

### 4. Notice

Even if the United States' sovereign immunity had been waived, Omni's Amended Complaint still fails to state a claim against the EPA because it did not provide sufficient notice. Before bringing a civil action under § 300j-8(a)(1) for a violation of Subchapter XII of the Safe Drinking Water Act, a private citizen must first provide notice of that violation to the EPA Administrator, any alleged violator, and the State where the violation is alleged to have occurred. Similarly, before bringing a civil action under § 300j-8(a)(2) for an alleged failure to perform a non-discretionary act or duty, the private citizen must provide notice of such action to the EPA Administrator. 42 U.S.C. § 300j-8(b)(1)–(2).

The form of the notice "shall be given in such a manner as the Administrator shall prescribe by regulation." 42 U.S.C. § 300j-8(b). For alleged violations under subsection (a)(1), that notice must have "sufficient information" to allow the recipient to "identify the specific requirement alleged to have been violated" and "the activity alleged to constitute a violation," as well as the relevant locations, dates, and persons responsible. 40 C.F.R. § 135.12(a). For alleged failures to act or perform a duty, the notice must "identify the provision of the Act which requires the act or creates the duty, and shall describe with reasonable specificity the action taken or not taken" alleged to be the "failure to perform." *Id.* § 135.12(b).

Omni provided notice to the Administrators of the Environmental Protection Agency and its Region 5 Chicago office in 2024, more than sixty days before suing. (¶ 11; ECF No. 22-1). The EPA challenges the sufficiency of that notice, however, pointing out that it fails to identify

20

any statutory provision requiring EPA action under subsection (a)(2).  (ECF No. 45 at 16–17).

Omni argues that the notice requirement is procedural, not jurisdictional, and asserts that its notice

was sufficient because it "complied with the [Safe Drinking Water Act's] procedural notice

requirements."  (ECF No. 48 at 9–10).  The EPA counters that Omni fails to dispute that it was

required to identify specific provisions of that Act in its notice and failed to do so, and that its

opposition raised (for the first time) the argument that the EPA's nondiscretionary duty originated

from 40 C.F.R. § 142.17.  (ECF No. 52 at 5).

The EPA is correct.  Omni has not provided sufficient notice to the EPA under the Safe

Drinking Water Act, and this is fatal to its claims against that agency.  *See McMillian v. Snyder*,

2017 WL 492077, at *2 (E.D. Mich. Feb. 7, 2017) (dismissing for failure to comply with the

statute's notice requirement).  The notice requirement "is a claim processing rule . . . that a district

court may not disregard" when a defendant timely raises the issue.  *Mich. Dep't of Env't Quality

v. City of Flint*, 296 F. Supp. 3d 842, 849–50 (E.D. Mich. 2017).  Omni may be correct that the

notice requirements are procedural rather than jurisdictional, (*see* ECF No. 48 at 9–10), but Omni

can only sue the EPA if it follows the notice requirements established by the Safe Drinking Water

Act in its limited waiver of sovereign immunity.  Thus, any different gloss on the nature of the

notice requirements would not save its claims against the EPA.  *See Hallstrom v. Tillamook Cnty.*,

493 U.S. 20, 31 (1989) ("[A] district court may not disregard [statutory notice] requirements at its

discretion."); *Boler v. Earley*, 865 F.3d 391, 405 (6th Cir. 2017) (characterizing the statutory notice

requirement as "procedural").

Although Omni's notice was more than sixty days before it filed suit, it did not provide

sufficient information to allow the EPA to identify any specific requirements of the Act that the

EPA was alleged to have violated or what activity constituted such a violation.  In fact, the notice

entirely fails to notify the EPA of Omni's violation theory that it now asserts under subsection (a)(1). By contrast, the notice does indicate that Omni believed the EPA had failed in its duty to monitor Ohio's regulatory regime under the Act, (ECF No. 22-1 at 2), though it again failed to identify the provision of the Act creating such a duty. And Omni did not provide any reasonable specificity of the EPA's actions or inactions that led to its purported failure. Indeed, the majority of the notice details alleged actions of some of the State Defendants.

Aside from a reference to a "general[]" failure to ensure Ohio's regime followed the Act, Omni's only specific citation is to a regulation governing operating, monitoring, and reporting requirements. (*Id.* at 1). But rather than showing some possible violation or failure to perform a duty on the part of the EPA, this regulation provides "minimum" operating, monitoring, and reporting requirements for injection wells. 40 C.F.R. § 146.23. It is entirely insufficient to provide notice of the claims Omni now asserts against the EPA, which advance a violation theory under subsection (a)(1) and a duty theory under subsection (a)(2), based on a purported EPA obligation to conduct an annual review of state primacy enforcement programs as provided by 40 C.F.R. § 142.17. Actions barred by the terms of a statute must be dismissed, *Hallstrom*, 493 U.S. at 31, and here, Omni is only permitted to bring a claim after proper notice. Without notice, Omni cannot state a claim that suffices under the limited statutory waiver of sovereign immunity. Dismissal against the EPA Defendants is warranted for insufficient notice alone.

In conclusion, even if this Court had subject matter jurisdiction, Omni's Amended Complaint against the EPA Defendants would be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because Omni has not alleged that it provided sufficient notice as required under § 300j-8(b)(1)–(2). *Mich. Dep't of Env't Quality*, 296 F. Supp. 3d at 849–50; *Boler*, 865 F.3d at 405.

22

### B.  State Defendants and Defendant Murphy

#### 1.  State Sovereign Immunity

Similar to the sovereign immunity that the United States and its agencies enjoy, the states generally enjoy sovereign immunity from lawsuits in federal courts.  States, "state officials sued in their official capacity for money damages," and "state agencies or departments" are protected by sovereign immunity.  *Boler*, 865 F.3d at 409–10; *see generally* U.S. Const. amend. XI; *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 243–44 (2019) (noting state sovereign immunity is not limited by the contours of the Eleventh Amendment).  This protection acts as a jurisdictional limit on federal courts.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100, 121, 124–25 (1984) ("A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.").  There are three exceptions to state sovereign immunity: (1) waiver by state consent to the suit; (2) express abrogation of state sovereign immunity by Congress; and (3) the *Ex Parte Young* doctrine.  *Boler*, 865 F.3d at 410 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).  The burden is on the State to assert an immunity defense.  *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006).

First, there is no question whether Ohio has waived sovereign immunity here:  it has not. *See Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 598 n.1 (6th Cir. 2016) (state defendants do not expressly consent to suit where they raise immunity defenses in their motion to dismiss).  The State Defendants point this out and Omni concedes as much.  (ECF Nos. 41 at 9–11; 44 at 17).  Thus, the first exception to state sovereign immunity does not rescue Omni's suit.

Second, Congress has not expressly abrogated state sovereign immunity in this instance. The text of the Safe Drinking Water Act makes that much clear, as it only provides for suits against the states "to the extent permitted" by the Eleventh Amendment.  42 U.S.C. § 300j-8(a)(1);

23

*Grinnell*, 736 F. Supp. 3d at 126 ("The plain text of the [Safe Water Drinking Act] does not manifest any intention by Congress to abrogate the State's sovereign immunity under the Eleventh Amendment."). Again, Omni concedes that the State Defendants have Eleventh Amendment immunity. (ECF No. 44 at 17). And the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide a basis "to overcome, or at least sidestep," Ohio's immunity from suit, *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902–03 (6th Cir. 2014), nor does 42 U.S.C. § 1983. *Boler*, 865 F.3d at 410 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Omni reframes the issue as whether Congress abrogated section 1983 actions under the Safe Drinking Water Act, (ECF No. 44 at 10), but the question here really is whether Omni's suit can get around the barrier of sovereign immunity. At least with respect to the second exception, the answer is that it cannot proceed on the basis of Congressional abrogation.

Third, *Ex Parte Young* permits plaintiffs to sue state officials in their official capacity for prospective relief to prevent future federal constitutional or statutory violations. *Ex Parte Young*, 209 U.S. 123 (1908). It does not extend to retroactive relief or claims for money damages. *Boler*, 865 F.3d at 512; *Mich. Corr. Org.*, 774 F.3d at 905. This exception is immediately fatal to most of the relief that Omni seeks under its Count III section 1983 action, along with any relief it could obtain from the Ohio Department of Natural Resources, because *Ex Parte Young* does not allow Omni to circumvent state sovereign immunity for money damages, nor does the exception reach beyond state officials. (¶¶ 146–47; *id.* at 36–37). Thus, state sovereign immunity dispenses with the Ohio Department of Natural Resources as a Defendant, and does not allow for most of the relief Omni seeks. *Cf. Grinnell*, 736 F. Supp. 3d at 126 n.12. Omni's Amended Complaint must be dismissed against the Department and insofar as it seeks monetary damages or retroactive relief pursuant to Fed. R. Civ. P. 12(b)(1).

But *Ex Parte Young* may allow a federal plaintiff to sue state officials for prospective forms of relief, "*if* the plaintiff already has a cause of action from somewhere else." *Mich. Corr. Org.*, 774 F.3d at 905. In theory, that cause of action could be provided by the Safe Drinking Water Act where the relief sought is "prospective[] and authorized by" that law, *Concerned Pastors*, 194 F. Supp. 3d at 603–04, because the Safe Drinking Water Act expressly grants a cause of action to private citizens that can extend to State actors. *Id.* at 597–98; *Boler*, 865 F.3d at 413–14 (finding complaint sufficient where it alleged ongoing violations of constitutional rights by "state-created danger and violation of the[] fundamental right to bodily integrity"); 42 U.S.C. § 300j-8(a)(1).

The question becomes whether Omni has a cause of action under either Count I for declaratory judgment or Count III for section 1983 relief against the individual State Defendants, either in their official capacities for prospective, non-monetary relief only, or in their individual capacities generally.

### 2. Count III: 42 U.S.C. § 1983 Action

Omni seeks to use section 1983 to obtain relief from alleged violations of the federal Safe Drinking Water Act and its related regulations, Ohio law and related regulations, the Fourteenth Amendment to the U.S. Constitution, and Article I of the Ohio Constitution. (¶¶ 143, 145; *id.* at 37).

Section 1983 provides for a civil action against individuals who, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subject[], or cause[] to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It provides for liability through "an action at law, suit in equity, or other proper proceeding for redress." *Id.* In sum, it

25

"may serve as a vehicle" for the plaintiff alleging violations of "the [U.S.] Constitution or federal law." *Boler*, 865 F.3d at 401.

### a. Applicable Law

There are two threshold questions that must be answered. First, can Omni seek relief under 42 U.S.C. § 1983 for all the violations it alleges? Second, if Omni can seek relief for at least some of the alleged violations, has Omni stated a claim that is viable under the Safe Drinking Water Act's primacy framework? The answer to the first question is partially yes and partially no, but the answer to the second question is a resounding no.

First, Omni cannot seek section 1983 relief for all the violations it alleges. As the State Defendants point out, section 1983 does not provide a mechanism of relief for alleged violations of state law or standalone violations of the state constitution. (*See* ECF No. 41 at 10). Section 1983 is "limited to deprivations of *federal* statutory and constitutional rights," and "does not cover official conduct that allegedly violates *state* law," just as *state* constitutional violations are only covered insofar as they are also *federal* constitutional deprivations. *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989). In response, Omni only argues that it should be able to "maintain a § 1983 action under the [Safe Drinking Water Act]," and does not address whether it may also maintain such an action separately for any other purported violation. (ECF No. 44 at 6–12). Thus, insofar as Omni alleges deprivations of its rights under the Fourteenth Amendment to the U.S. Constitution, Ohio law and regulations, or Article I of the Ohio Constitution, this Court construes these allegations to be subsumed within Omni's singular argument that the State Defendants deprived it of its rights under the federal Safe Drinking Water Act.

The next question is whether Omni has stated a claim for a section 1983 violation of the Safe Drinking Water Act[9] by the actions of the individual State Defendants.  The parties agree that *Blessing v. Freestone*, 520 U.S. 329 (1997), and *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), provide the standard for determining whether a statutory right can be vindicated under 42 U.S.C. § 1983.  After briefing in this matter concluded, however, the Supreme Court issued its decision in *Medina v. Planned Parenthood S. Atl.*, which explicitly noted that its prior decision in *Gonzaga* had rejected any reading of *Blessing* "that would 'permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.'"  606 U.S. 357, 376 (2025) (quoting *Gonzaga*, 536 U.S. at 283).  Thus, the initial inquiry is a simple one:  does the Safe Drinking Water Act confer any individual right at all to Omni?  After all, section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere." *Gonzaga*, 536 U.S. at 285.  Simply alleging a *violation* of a federal statute is not enough—Omni must show that the Safe Drinking Water Act clearly and unambiguously gives it individual federal *rights*.  *Medina*, 606 U.S. 357, 376 (2025); *Gonzaga*, 536 U.S. at 283.

---

[9] Ostensibly, there is a circuit split regarding whether section 1983 claims may be brought for violations of the Act, as the First Circuit previously found that the Safe Drinking Water Act was a comprehensive statutory scheme that precluded section 1983 claims. *Mattoon v. City of Pittsfield*, 980 F.2d 1, 6 (1st Cir. 1992).  But that is not the law within the Sixth Circuit. *Boler*, 865 F.3d at 409; *see also Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 615–16 (6th Cir. 2001) (no preclusion for whistleblower provisions).  Moreover, *Mattoon* was decided prior to the Supreme Court's decision in *Fitzgerald v. Barnstable Sch. Comm.*, which provided the framework for evaluating claimed section 1983 constitutional violations.  555 U.S. 246, 252 (2009); *see Hootstein v. Amherst-Pelham Regional Sch. Comm.*, 361 F. Supp. 3d 94, 108 (D. Mass. 2019) ("*Mattoon* was decided without the benefit of *Fitzgerald*," which provided a "framework" to analyze congressional intent to preempt section 1983 "by analyzing . . . text and legislative history, reviewing [the] remedial scheme, and comparing the [statute's] rights and protections to those found in the Constitution.").

*b. Analysis*

As all Defendants note, Omni misunderstands how Ohio's primacy regime functions. (ECF Nos. 47 at 4–5; 45 at 1–4; *see* ECF No. 41 at 11–13). Omni's theory is that it has that necessary federally-created statutory right "to legally operate a Class II Saltwater Injection well" under the Safe Water Drinking Act by virtue of its permits issued by the state of Ohio. (ECF No. 44 at 7 (citing Am. Compl. ¶ 77)). Omni points to 42 U.S.C. §§ 300h(b)(1)(B) and 300h-2(a)(1) as being the federal statutory provisions that create this right, and compares its situation to that of the healthcare providers in *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990).[10] (*Id.* at 6–10).

But Ohio created its own primacy regime for regulating class II injection wells. True, the federal regulatory scheme expressly incorporates Ohio's regulatory framework. *See* 40 C.F.R. § 147.1800(a). But it also permits Ohio to adopt and enforce "more stringent or more extensive" requirements, or expand the scope of the state primacy program. 40 C.F.R. § 145.1(g). Ohio law generally maps Ohio's primacy regime to the Safe Drinking Water Act, but explicitly notes that Ohio's regime may be "more stringent" than the federal Act if "essential to ensure that underground sources of drinking water will not be endangered." Ohio Rev. Code § 1509.22(D)(5). And in January 2022, after Omni received its initial permits in November 2021 but before Chief Vendel revoked them in May 2022, Ohio's Administrative Code was overhauled, so that the Chief could "immediately suspend" operations of a Class II well if, as relevant here: (1) it was "causing or [was] likely to cause contamination of the land, surface waters, or subsurface waters"; (2) the Chief "determines that operation or continued operation of the well . . . is likely to endanger public health or safety"; or (3) the Chief "determines that brine . . . may be outside of the permitted

---

[10] In *Wilder*, the Supreme Court determined that the Boren Amendment to the Medicaid Act created an enforceable right under § 1983 for healthcare providers to reasonable and adequate reimbursement rates. 496 U.S. at 509–10.

injection zone or area of review." Ohio Admin. Code § 1501:9-3-07(N)(1)(a), (N)(1)(f), (N)(1)(g) (effective Jan. 13, 2022).[11]

Omni's permits to inject were issued by the State of Ohio pursuant to Ohio law. (ECF Nos. 22-5; 22-6). Neither provision of federal law that Omni references would confer an individual right to Omni that Omni could assert under Ohio's primacy regime. The first statutory provision places *minimum requirements* on State underground injection programs "to prevent underground injection which endangers drinking water sources." 42 U.S.C. § 300h(b)(1). It specifies that State programs approved under § 300h-1 must "require"—*if* the State program "provides for authorization of underground injection by permit"—that permit applications "must satisfy the State that the underground injection will not endanger drinking water sources." *Id.* § 300h(b)(1)(B). This provision provides for *limitations* on any permitting regime that primacy states might want to create. It is not an unambiguously conferred right to or for *anything* to possible permitholders. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 313 (2012) ("A statute's mere prohibition of a certain act does not imply creation of a private right of action for its violation" unless such a remedy is "either express or clearly implied from the text of the statute.").

The second statutory provision Omni cites, 42 U.S.C. § 300h-2(a)(1), explicitly grants the *EPA Administrator* the authority to commence enforcement actions. Omni argues that any person notified by the EPA Administrator regarding a violation "would necessarily hold enforceable rights, including that of due process, through the [Safe Drinking Water Act] relative to its permit."

---

[11] Ohio's Administrative Code incorporated other sweeping regulatory changes at that time. For example, the Chief became able to designate a larger area for review during well construction and prohibit injections on a site-specific basis. Ohio Admin. Code § 1501:9-3-05(A)(1)(d), (B)(1) (effective Jan. 13, 2022).

29

(ECF No. 44 at 8).  But the right to due process is not a right that the Safe Drinking Water Act *unambiguously confers to persons to bring causes of action under 42 U.S.C. § 1983*.  Omni's argument here cannot stand in light of *Gonzaga*.  Nor is Omni's reliance on *Wilder* availing.  *Medina* abrogated *Wilder* and instructed that lower court judges "should not" "still consult *Wilder* [or] *Blessing* when asking whether a spending-power statute creates an enforceable individual right."  *Medina*, 606 U.S. at 376; *see Lancaster ex rel. Green v. Cartmell*, 162 F.4th 1063, 1067, 1069–70 (10th Cir. 2025) (recognizing *Wilder*'s abrogation, calling into question the continuing viability of the *Blessing* test, and generally noting that "provisions may benefit or even protect individual interests without conferring an enforceable right").

In sum, Omni has failed to state a claim under 42 U.S.C. § 1983 for two reasons.  First, Ohio's class II injection well permits are governed by Ohio law under a primacy regime, not federal law.  Thus, Omni cannot maintain a section 1983 suit against state actors for its purported rights under Ohio's laws and regulations granting permits to wells because any of its legal rights are state creations, not federal ones.  Second, even if the Safe Drinking Water Act ultimately provided for Omni's permits, Omni still could not sue because it has not shown any provision of that law that unambiguously conferred it with an individual *right*.  Count III is dismissed for failure to state a claim.[12]

---

[12] In light of this ruling, this Court need not, and does not, reach the State Defendants' other, alternative arguments for dismissal:  that Omni's Amended Complaint is unsupported in its request for injunctive relief, has only conclusory and undeveloped allegations of a conspiracy between the Defendants, cannot surmount qualified immunity, and cannot proceed against Defendant Murphy given his role as an expert witness.  (ECF Nos. 41 at 11–19; 47 at 3, 7–11).

3. *Count I:  Declaratory Judgment*

Count I of Omni's Amended Complaint seeks "a declaratory judgment as to the regulatory requirements and limitations of the [Safe Drinking Water Act] and corresponding regulations." (¶¶ 14, 113–18; *id.* at 36–37).

Under the Declaratory Judgment Act, when a federal court is presented with a controversy over which it has jurisdiction,[13] it "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  As the statutory language suggests, this is "a power permissive, not mandatory," *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984), that "'confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

When properly issued, declaratory judgments can clarify and settle legal relations, while terminating proceedings and affording relief from uncertainty, insecurity, and controversy.  *Grand Trunk*, 746 F.2d at 326 (citations omitted).  In *Grand Trunk*, the Sixth Circuit set forth five factors to consider in deciding whether a declaratory judgment would be appropriate:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

---

[13] Certain types of proceedings are explicitly excluded from the statutory remedy, such some actions brought with respect to federal taxes.  *See* 28 U.S.C. § 2201.  And the Declaratory Judgment Act "does not provide courts an independent source of federal jurisdiction, but rather only provides litigants a remedy once jurisdiction is found to exist on another ground."  *Goliad Cnty. v. Uranium Energy Corp.*, 2009 WL 1586688, at *11 (S.D. Tex. June 5, 2009); *United States v. City of Menominee*, 727 F. Supp. 1110, 1116 (W.D. Mich. 1989).

*Id.* Since then, the Sixth Circuit has further subdivided the fourth factor into three sub-factors:

> (1) [W]hether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).

### a. Parties' Arguments

The State Defendants argue that all five *Grand Trunk* factors weigh against a grant of declaratory relief, and they focus on the fourth and fifth factors as most instructive. Under the fourth factor, the State Defendants point out that any declaratory judgment issued by this Court would necessarily be "opin[ing] on . . . complex and highly specialized scientific determinations that the [Safe Drinking Water Act] commits to the localized expertise of primacy states" like Ohio. The issuance of a declaratory judgment, say the State Defendants, would not only defeat the purpose of primacy state enforcement under the Act, but would interfere with ongoing and future state proceedings. To the fifth factor, they also point out that these ongoing state proceedings show that the state courts provide an avenue for remedies that Omni already has been seeking, underscoring friction-related federalism concerns. (ECF No. 41 at 23).

Regarding the first two factors, the State Defendants posit that Omni's proposed declaratory judgment would not settle the controversy or clarify legal relations because it would address the conditions of Omni's permit, which "is just the first step in the relationship between the Division and an injection well operator." (ECF No. 41 at 21–22). As they point out, Ohio's Administrative Code permits the chief of the Division to "immediately suspend, by order,

32

operations of a class II disposal well or surface facility" under certain circumstances, including if the well "is causing or is likely to cause contamination to the land, surface waters, or subsurface waters." Ohio Admin. Code § 1501:9-3-07 (N)(1)(a). And with respect to the third factor, they argue that Omni is seeking to "procedurally fence" the State Defendants out of state court, where Omni has already been litigating and has been "[u]nable to get the result it wants." (ECF No. 41 at 22).

In response, Omni argues that its sought declaratory judgment would only raise legal issues. Fundamentally, it posits that the question is "whether the [Act] allows a state to impose Class II injection well restrictions absent a[n] [underground source of water]." In this case, the closest such water source is roughly twelve miles away from Omni's two wells—beyond the applicable area of review. (ECF No. 44 at 3–5). Omni emphasizes that Ohio's statute provides that primacy enforcement should be "'no more stringent than required for compliance with the Safe Drinking Water Act.'" (*Id.* (quoting Ohio Rev. Code § 1509.22(D)(5)). Omni does not specifically address the *Grand Trunk* factors, as the State Defendants point out in their reply. (ECF No. 47 at 3–4, 11–12).

### b. Analysis

Any declaratory judgment here would be inappropriate. Begin with the first two *Grand Trunk* factors, which ask whether Omni's requested declaratory judgment regarding the propriety of the State Defendants' injection well restrictions would settle the controversy, and whether it would serve a useful purpose in clarifying legal relations at issue. This case is not an independent dispute. Omni has been engaged in state-level litigation regarding its subject-matter for years. For this Court to issue a declaratory judgment as Omni requests "would not clear up the legal issues" in the state-court litigation, *Grand Trunk*, 746 F.2d at 326, because—despite how Omni

33

characterizes the issues as being purely legal—there appear to be underlying factual disputes as to whether some sources of drinking water are endangered that would inform how the law applies in this instance. *Cf. Hobart Corp. v. Dayton Power & Light Co.*, 2025 WL 3171057, at \*6 (S.D. Ohio Nov. 13, 2025) ("[T]his is not the type of case where the Court or any of the parties can predict what the future dispute will entail, and without a viable forecast, any declaration given would likely be ineffective."). Although Omni alleges that no sources of drinking water are endangered, Omni recognizes that Defendant Murphy, the Division's petroleum engineer, "disagreed with the analysis of Omni's consultant." (¶¶ 101–03). Indeed, Mr. Murphy's report concluded that Omni's step rate test analyses were "not reliable." (ECF No. 22-16 at 1).

Omni tries to frame the issue as whether a state can impose Class II injection well restrictions absent an underground source of drinking water. (ECF No. 44 at 3; *see id.* at 11–12). But the Ohio law that Omni cites is not absolute in limiting Ohio's primacy regime to be "no more stringent than required for compliance" with federal law because that same statutory provision suggests that more stringent measures are permitted *if* "essential to ensure that underground sources of drinking water will not be endangered." Ohio Rev. Code § 1509.22(D)(5). Omni might try to downplay that final clause, but it cannot excise it from the law by its desire to avoid it.

The uncertainty of the facts is instructive as to why these first two factors weigh against the issuance of a declaratory judgment—depending on the state of the injection wells and the nearby land, surface waters, and subsurface waters, the actions of the State Defendants may or may not have been in accordance with Ohio law. Presumably, the state court action will continue regardless of what happens in this Court. The issues before this Court and the state courts are undoubtedly "intertwined," and "when two controversies have interrelated facts and parties, the court should weigh [the first] factor against" the issuance of a declaratory judgment. *Nami Res.*

34

*Co. v. S. Miss. Elec. Power Ass'n*, 2013 WL 1332777, at \*4 (E.D. Ky. Mar. 29, 2013). The second factor also weighs against issuance because the usefulness of any declaratory judgment is "severely undercut" by the presence of already-ongoing Ohio ligation. *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004).

Next, the third factor asks whether Omni is seeking a declaratory judgment for procedural fencing reasons. The State Defendants impute bad motives to Omni in bringing suit in federal court. This Court will decline the invitation to attribute any improper motive to Omni in bringing this action. A clear-cut example of procedural fencing might occur with the proverbial race to the courthouse, if Omni had sought to file a lawsuit in federal court before a state action commenced. *See Nami Res. Co.*, 2013 WL 1332777, at \*5 (plaintiffs "temporarily outmaneuvered" the defendant by suing in federal court). But there is less of a reason to "make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court." *United Specialty Ins. Co.*, 936 F.3d at 399. Though it is true that the "need" for this Court to issue a declaratory judgment appears to be less in this case given "a state court has already accepted jurisdiction over the subject matter of the lawsuit," *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986), that suggests that this factor should not weigh in favor of granting a declaratory judgment. There is no reason to weigh this factor *against* granting a declaratory judgment. Ultimately, this third factor is neutral, and not important in the grand scheme of things—as the Sixth Circuit has observed, "[t]he third factor usually does not weigh heavily in the analysis." *United Specialty Ins. Co.*, 936 F.3d at 399. So too, here.

By contrast, the fourth factor certainly is *not* neutral. Its first subfactor asks whether there are factual issues important to an informed resolution of the case. There are. Just as the presence of factual issues being determined in state-court litigation informs the first two *Grand Trunk*

factors, it also informs the first subfactor of the fourth *Grand Trunk* factor here. *Id.* at 399–400. The question is not such a pure matter of law as Omni might like it to be. The legality of the State Defendants' regulatory actions depends on Ohio's primacy regime as constructed under the aegis of the Safe Drinking Water Act,[14] as well as the factual backdrop of Omni's injection wells and the apparent dispute regarding contaminant risks. To reach a conclusion on the issues on which Omni seeks declaratory relief would require review of Ohio law and possible consideration of whether Omni's two injection wells might endanger underground sources of drinking water, or otherwise cause contamination. *See* Ohio Rev. Code § 1509.22(D)(5); Ohio Admin. Code § 1501:9-3-07(N)(1)(a). These are issues with which Ohio courts are grappling. *E.g.*, *Omni Energy Grp., LLC v. Vendel*, 2024-Ohio-4713 (Ohio 2024) (accepting appeal for review). Thus, the second subfactor also leans slightly against issuing a declaratory judgment. This dispute raises issues of Ohio law under the primacy framework of the federal Safe Drinking Water Act. Certainly, the state courts that have been handling this ongoing litigation already have familiarity with the facts of the dispute, and Ohio's courts are well-positioned to evaluate the facts in light of Ohio law. *See Travelers Indem. Co. v. Bowling Green Pro. Ass'n, PLC*, 495 F.3d 266, 272–73 (6th Cir. 2007). Turning to the third and final subfactor, this Court determines that it is neutral. The overarching federal regulatory scheme under the Safe Drinking Water Act cannot be ignored. Yet, the state's primacy regime is primarily what is at issue; hence, this case "implicates important state policies" that are appropriately considered in state court. *Flowers*, 513 F.3d at 561. Overall,

---

[14] Although Omni couches its request for a declaratory judgment as being based solely on the federal Safe Drinking Water Act and associated regulations, it concedes that states can be granted primacy enforcement. (ECF No. 44 at 3). And its Amended Complaint specifically seeks a declaratory judgment that could impact Ohio's ability to regulate as a primacy state. (¶ 118).

the fourth factor weighs against declaratory relief, as any judgment "would cause friction between the state and federal court systems." *Nami Res. Co.*, 2013 WL 1332777, at *5–6.

Last, the fifth factor: whether there is an effective alternative remedy. There is no question that Omni has avenues for relief through the state court system. Omni began pursuing those remedies *prior* to bringing this action, and Ohio's state courts of general jurisdiction are equally responsible for safeguarding Omni's constitutional rights,[15] just as they are generally able and required to interpret federal law as necessary.[16] Here, Omni could seek the same form of declaratory relief in an Ohio court:

> [C]ourts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for under this chapter. The declaration may be either affirmative or negative in form and effect. The declaration has the effect of a final judgment or decree.

Ohio Rev. Code § 2721.02(A); *Galloway v. Horkulic*, 2003-Ohio-5145 ¶¶ 21–23 (Ohio 7th Dist. Ct. App. 2003). This state remedy would provide the added benefit of allowing an Ohio court to apply its own law. *See United Specialty Ins. Co.*, 936 F.3d at 401–02; *Nami Res. Co.*, 2013 WL 1332777, at *6. This final factor also cuts against Omni's sought declaratory relief.

In sum, four factors weigh against issuing a declaratory judgment, and one is neutral. In this case, there are unresolved factual issues and parallel state actions arising from the same facts, and alternative remedies are available. Thus, declaratory judgment is inappropriate. *Evans*, 791

---

[15] *E.g.*, *Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("[S]tate courts have the solemn responsibility equally with federal courts to safeguard constitutional rights.") (internal quotation marks omitted). [16] *E.g.*, *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 342 (1816) ("It was foreseen that in the exercise of their ordinary jurisdiction, state courts would incidentally take cognizance of cases arising under the constitution, the laws, and treaties of the United States."); *Johnson v. Fankell*, 520 U.S. 911, 919 (1997) (noting the "requirement that a state court of competent jurisdiction treat federal law as the law of the land"); *see also* Henry M. Hart, Jr., *The Relations Between State and Federal Law*, 54 Colum. L. Rev. 489, 507 (1954) ("Absent a special prohibition, express or implied, the state courts enforce federal law as they do their own.").

F.2d at 64; *see Jack v. Grose*, 2017 WL 958621, at \*9 (S.D. Ohio Mar. 13, 2017) (Marbley, J.) (plaintiffs would not suffer prejudice from dismissal of a count for declaratory judgment when they still had avenues to obtain relief through other claims); *McGlone v. Centrus Energy Corp.*, 2020 WL 4431482, at \*16 (S.D. Ohio July 31, 2020) (Marbley, J.).  Count I is dismissed for these reasons of efficiency, fairness, and federalism.

### C.  *Younger* Abstention; *Rooker-Feldman* Doctrine

The State Defendants request that if some of Omni's claims survive dismissal, this Court determine that the *Rooker-Feldman* doctrine bars their consideration, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005),[17] or alternatively that abstention under *Younger v. Harris*, 401 U.S. 37 (1971) would be appropriate.  (ECF No. 47 at 12–14).

First, the *Rooker-Feldman* doctrine does not apply here.  Omni is not:  (1) a state court loser; (2) complaining of injuries *caused by state court judgments*; (3) rendered before district court proceedings commenced; and (4) inviting this Court to review and reject those judgments. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (citing *Exxon*, 544 U.S. at 284).  For *Rooker-Feldman* to be relevant, Omni *must* be "complain[ing] of an injury *caused* by a state-court judgment."  *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018); *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("The injury must be caused by the [state-court] judgment itself.  Period.").  That is simply not the injury that Omni is alleging here. (ECF No. 44 at 14–15).

---

[17] The State Defendants' *Rooker-Feldman* request is perplexing, because if *Rooker-Feldman* applied, this Court would be deprived of jurisdiction over Omni's Amended Complaint.  It would not make sense for the *Rooker-Feldman* doctrine to come into play as an the alternative reason for dismissal *after* this Court determined that Omni had stated a claim against the State Defendants, because if *Rooker-Feldman* applied, this Court's review would be *barred*.  *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (citation and internal quotation marks omitted); *see* 28 U.S.C. § 1257.

Separately, because all of Omni's claims are dismissed for lack of jurisdiction or for failure to state a claim, there is no reason for this Court to consider whether *Younger* abstention would be appropriate given ongoing litigation in state courts.

### D.  Doe Defendants

Finally, Omni never responded to the Magistrate Judge's Order to Show Cause why its claims against Defendants John Doe and Jane Doe should not be dismissed for failure to effect service under Fed. R. Civ. P. 4(m).  And after Omni failed to respond to that show cause order, Omni did not object to the Magistrate Judge's Report and Recommendation that its claims against these Defendants be dismissed without prejudice.  Therefore, this Court adopts the Report and Recommendation.  *See Petty v. Cnty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007) (unidentified parties to a lawsuit must eventually be named and served under Rule 4(m)), *abrogation on other grounds recognized by Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017).  Defendants John Doe and Jane Doe are dismissed without prejudice.

### V.    CONCLUSION

For the foregoing reasons, the EPA Defendants' Motion to Dismiss (ECF No. 45) is **GRANTED** for lack of subject matter jurisdiction.  The State Defendants' Motion to Dismiss (ECF No. 41) is **GRANTED in part** and **DENIED in part** for lack of subject matter jurisdiction, and otherwise **GRANTED** for failure to state a claim.  The Report and Recommendation (ECF No. 50) is **ADOPTED** and the unidentified Doe Defendants are **DISMISSED**.  Omni's Amended Complaint is **DISMISSED**.  The Clerk of Court is **DIRECTED** to close the case.

        **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 25, 2026**

39